**Bobby Milton McALLISTER**

v.

**J. Wayne ALLGOOD, Warden.**

**Misc. No. 834.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Jan. 24, 1966.

Edward B. Dufreche, Ponchatoula, La., for petitioner.

Teddy W. Airhart, Jr., Asst. Atty. Gen. of Louisiana, Baton Rouge, La., for respondent.

WEST, District Judge:

On July 26, 1960, a cold-blooded murder was committed in the Parish of Tangipahoa, State of Louisiana, taking the life of one John O'Brien, a filling station attendant. After the killing, two cash registers at the filling station were robbed. On the following day, July 27, 1960, petitioner, Bobby Milton McAllister, and an alleged accomplice, Calvin Newman Carney, were apprehended and charged with murder. Petitioner, at that time, signed a confession setting forth in detail the facts in connection with the prior planning and the actual commission of the murder. He was tried by a jury, found guilty as charged, and sentenced to death by electrocution, pursuant to Louisiana law. An appeal was taken in his behalf, and the Supreme Court of Louisiana affirmed the conviction and sentence. State of Louisiana v. McAllister,

244 La. 42, 150 So.2d 557 (1963). Petitioner then appealed to the United States Supreme Court, and that Court dismissed the appeal for want of jurisdiction, but then, treating the appeal papers as a petition for a writ of certiorari, denied certiorari. McAllister v. State of Louisiana, 375 U.S. 260, 84 S.Ct. 362, 11 L.Ed. 2d 311 (1963).

Petitioner is presently incarcerated in Louisiana State Penitentiary awaiting execution of the death sentence imposed. He applies to this Court for the issuance of a writ of habeas corpus, contending that the circumstances attending his trial were such as to deprive him of the rights secured by the Fourteenth Amendment to the United States Constitution. As grounds for this contention, he complains that during the course of his trial, four of the deputy sheriffs who testified against him were allowed by the Court to have constant access to the jury and were, in fact, placed in charge of the jury, both day and night, during the entire course of the trial. Thus he contends that while he was accorded the constitutionally guaranteed right of trial by jury, he was not accorded the necessary safeguards to assure him of a fair trial by a panel of indifferent, impartial jurors, and that this failure to assure him of a fair hearing before an untampered-with jury violates even the minimal standards of due process. In support of his position, petitioner relies entirely on the holding of the United States Supreme Court in the case of Turner v. State of Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965).

In answer to petitioner's contentions, the State merely argues first that the Turner case is distinguishable from the present case, and secondly, in effect, that the dissent of Mr. Justice Clark in the Turner case should be applied here as the applicable law. This Court cannot agree with either of respondent's contentions.

It is, of course, well settled that when a Federal Court hears an application for the issuance of a writ of habeas corpus the question of the guilt or in-

nocence of the petitioner is not before the Court. The habeas court must concern itself only with the question of whether or not, during the proceedings had against the petitioner, all of the rights guaranteed him by the Constitution and Laws of the United States have been adequately protected. Johnson v. Walker, 199 F.Supp. 86 (E.D.La.1961), affirmed 317 F.2d 418 (CA5 1963); Shaver v. Ellis, 255 F.2d 509 (CA5 1958); Widener v. Harris, 60 F.2d 956 (4 Cir. 1932); United States ex rel. Helwig v. Maroney, 271 F.2d 329 (3 Cir. 1959).

Thus, said the Court in Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961):

> "A fair trial in a fair tribunal is a basic requirement of due process. * * * This is true, regardless of the heinouness of the crime charged, the apparent guilt of the offender or the station in life which he occupies. * * *"

█ Turning now to the question of whether or not petitioner's constitutionally guaranteed rights were adequately protected during his trial, and disregarding entirely the question of his guilt or innocence, we come face to face with the holding of the United States Supreme Court in the Turner case, supra, decided on January 18, 1965. That case arose in the same Tangipahoa Parish as did the present case, and it involved a man convicted of murder and sentenced to die by electrocution. It involved the identical issue as is here presented, i. e., whether or not the defendant's rights had been violated when the Court placed two deputy sheriffs who had testified on behalf of the State against the petitioner in charge of the jury during Turner's trial. The United States Supreme Court, in reversing Turner's conviction, said:

> "In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel. What happened in this case operated to subvert these basic guarantees of trial by jury. It is to be emphasized that the testimony of Vincent Rispone and Hulon Simmons was not confined to some uncontroverted or merely formal aspect of the case for the prosecution. On the contrary, the credibility which the jury attached to the testimony of these two key witnesses must inevitably have determined whether Wayne Turner was to be sent to his death. To be sure, their credibility was assailed by Turner's counsel through cross-examination in open court. But the potentialities of what went on outside the courtroom during the three days of the trial may well have made these courtroom proceedings little more than a hollow formality. Cf. Rideau v. [State of] Louisiana, 373 U.S. 723 [83 S. Ct. 1417, 10 L.Ed.2d 663].

> "It is true that at the time they testified in open court Rispone and Simmons told the trial judge that they had not talked to the jurors about the case itself. But there is nothing to show what the two deputies discussed in their conversations with the jurors thereafter. And even if it could be assumed that the deputies never did discuss the case directly with any members of the jury, it would be blinking reality not to recognize the extreme prejudice inherent in this continual association throughout the trial between the jurors and these two key witnesses for the prosecution. We deal here not with a brief encounter, but with a continuous and intimate association throughout a three-day trial —an association which gave these witnesses an opportunity, as Simmons put it, to renew old friendships and make new acquaintances among the members of the jury.

> "It would have undermined the basic guarantees of trial by jury to per-

mit this kind of an association between the jurors and two key prosecution witnesses who were *not* deputy sheriffs. But the role that Simmons and Rispone played as deputies made the association even more prejudicial. For the relationship was one which could not but foster the jurors' confidence in those who were their official guardians during the entire period of the trial. And Turner's fate depended upon how much confidence the jury placed in these two witnesses."

But the State now argues that in order for Turner to be controlling, the deputy sheriffs involved must have been "key witnesses" and their association with the jury must have been "continuous and intimate." Such, they say, was not the case here. I simply cannot agree. There were apparently four deputies who, from time to time, during the trial, had the jury in their charge. They were Hulon Simmons (one of the same deputies involved in the Turner case), and Oswald Johnson, Harry Joynton, and Mervin Falcon. These deputies, during the course of the six day trial, were in constant attendance upon the jury, eating with them, sleeping with them, delivering messages for them to their families, etc. Their activities in this case were identical with those involved in the Turner case. Also, there is no way to classify these deputies other than as key witnesses for the State. Their testimony involved not only the production of material evidence against the petitioner, but also involved the question of whether or not the confession given by petitioner and used against him at his trial was voluntarily given. The defense contended during the trial that the confession was made "under the influence of fear, duress, intimidation, menaces, threats, inducements, and/or promises." These deputies testified to the contrary. As observed by the Court in the Turner case, the credibility which the jury attached to the testimony of these deputies must inevitably have played a part in determining whether or not petitioner was to be sent to his death. There is simply no distinction that this Court can discern between the essential facts in the Turner case and the facts in this case.

When questioned by this Court, counsel for the State readily conceded that he would not, in a criminal case prosecuted by him, stand idly by while the Court proceeded to place two or three key defense witnesses in charge of the jury for the duration of the trial. Certainly if such a procedure would be considered unfair to the State, so must a similar procedure be considered unfair to this petitioner.

■■ As for the State's reliance upon the dissenting opinion in Turner, little need be said. While there may be much merit in the dissenting opinion of Mr. Justice Clark, it is still contrary to the majority holding by which, of course, this Court is bound. Being unable to distinguish the facts in the present case from those presented to the United States Supreme Court in the Turner case, the latter case must be considered as controlling. The suggestion that Turner should not be applied retroactively is also unattractive. The constitutionally guaranteed right to a fair trial by a fair, uninfluenced and impartial jury is so fundamentally and basically important that its existence must be considered to have predated Turner or any other case antedating the Constitution itself.

This Court, therefore, being of the opinion that the very fundamental right of the petitioner, regardless of the "heinousness of the crime charged" or "the apparent guilt of the offender" to be tried, pursuant to the Sixth Amendment to the United States Constitution "by an impartial jury of the state or district wherein the crime shall have been committed * * *" was not preserved during his trial, will forthwith order that the State of Louisiana either proceed against petitioner within a reasonable time, and in accordance with law, or, failing to do so, release him from custody.