**Bryant Williams BOWLES, Jr., Appellant,**

v.

**The STATE OF TEXAS, Appellee.**

**No. 22939.**

United States Court of Appeals
Fifth Circuit.

Sept. 19, 1966.

Clyde W. Woody, Marian S. Rosen, Houston, Tex., for appellant.

Howard M. Fender, Asst. Atty. Gen., Austin, Tex., Sam R. Wilson, Thomas H. Routt, Asst. Attys. Gen., Houston, Tex., for appellee.

Before GEWIN and THORNBERRY, Circuit Judges, and WEST, District Judge.

GEWIN, Circuit Judge:

Appellant, Bryant W. Bowles, Jr., was convicted in August of 1958 of the murder of his brother-in-law, Earl Harvey. He was sentenced by the District Court of Hardin County, Texas, to confinement in the state penitentiary for life. He filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Texas, in June of 1964. After a full hearing, at which appellant was represented by counsel, the petition was denied. A certificate of probable cause was issued by this Court, and this appeal is prosecuted pursuant to 28 U.S.C. § 2253.

The appellant makes three basic contentions: (1) the sheriff's continual and intimate contact with the jury during his trial deprived him of his right to an impartial and unbiased jury, Turner v. State of Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424; (2) the district attorney suppressed evidence favorable to him; and (3) he was denied his right to the effective assistance of his chosen counsel when the state court denied a motion for a continuance predicated, in part, on his counsel's alleged ill health. After a full and complete study of the entire record, giving careful consideration to the evidence presented at both the district court hearing and the state court proceedings, we find the appellant's contentions to be without merit. Accordingly, we affirm the judgment of the district court.

On May 3, 1958, the day before his death, the deceased had engaged in an altercation with the appellant's wife. During the difficulty, he slapped her soundly and manhandled her in such a way as to cause several bruises on her arm. Through Mrs. Bowles, he also challenged the appellant to meet him, asserting that he was not afraid of the appellant and had wanted to get ahold of him for some time. At the time of this difficulty between decedent and Mrs. Bowles both knew that appellant was in Chicago on business. Mrs. Bowles telephoned her husband and he returned to Texas the following day. After talking with his wife, appellant took his shotgun, because he contended Harvey always carried a knife, and went to the home of the deceased. Shortly thereafter he shot Harvey on the porch of Harvey's home. The state alleged, and the jury found, that the murder was intentional. The appellant maintained that he acted in self-defense since he believed Harvey was moving to get a gun. The judgment of conviction was affirmed by the Court of Criminal Appeals of Texas. Bowles v. State, 168 Tex.Cr.R. 241, 324 S.W.2d 841 (1959).

■ We observe at the outset that this case presents a tragic occurrence arising out of a family dispute or controversy. The decedent and the defendant married sisters. The murder resulted from a heated confrontation arising out of that dispute. We thoroughly agree with the statement of the District Court that the sentence imposed "was severe". Indeed, it was inordinately severe in light of the facts and circumstances under which the crime was committed.[1] It is not the function of this Court, however, to vacate state convictions on the mere suspicion of impropriety, nor to pass on the suitability of the sentence, provided the defendant's constitutional rights have been adequately protected.

## I

■■ The original trial in the state court lasted for some seven days, extending over a weekend. The jury was confined during the entire period. Under state law, the sheriff's duties included acting as bailiff in criminal cases. Except when they were in the courtroom or deliberating, the sheriff or his deputies were in attendance upon the jury at all times.[2] The member of the sheriff's force who took them out to meals, or escorted them in and out of the courtroom depended on the non-judicial work schedules of the various members of the staff. As a necessary consequence, the sheriff came into contact with the jury on several occasions during the long trial. It was inevitable that he do so. Nevertheless, the district court found that the deputies supervised the jury the greater part of the time. We conclude, therefore, that the sheriff's role in the appellants' trial was not sufficient in the circumstances here presented to bring this case within the applicable principles of *Turner*.[3] Assuming, but not deciding, that the sheriff's contacts were too continuous and intimate under the teachings of *Turner*, we find that his testimony was not sufficiently vital to the state's case to invalidate the conviction.

1. As noted by the District Court, we are also aware that we have no authority to review the sentence. We take notice of the fact that the State of Texas has procedures for the continual review of the cases of prisoners for the purpose of granting mercy and clemency in appropriate circumstances.

2. At the time of the habeas hearing in the United States District Court, the sheriff was dead. The hearing took place approximately six years after trial and conviction in the state court.

3. There is no evidence to indicate that the sheriff, or his deputies at any time discussed the case with the jurors. Although we are mindful of the Supreme Court's admonition in Turner v. State of Louisiana, 379 U.S. 466, 473, 85 S.Ct. 546 that such contact ought not be condoned, we feel that in the circumstances of this case we are not "blinking [at] reality" in finding the contact non-prejudicial. See Ryan v. United States (1951) 89 U.S. App.D.C. 328, 191 F.2d 779.

In *Turner* the offending deputies were the investigating officers: they were the officials who apprehended Turner, and took his confession. They corroborated that confession at the trial, and it was on the basis of their testimony that the court and the jury found the confession voluntary. The weight and significance which the jury accorded their testimony were important and determining factors in their decision to convict or acquit. See also McAllister v. Allgood, 249 F. Supp. 408 (E.D.La.1966). The testimony of the sheriff in this case did not assume the importance or indispensability in the state's case as did the testimony of the officers in *Turner*.

Indeed, the evidence clearly supports the finding of the District Court that there was no serious contradiction between the sheriff's testimony and the appellant's position and contentions. Aside from the formal plea of not guilty, the appellant did not contest the killing; he relied on self-defense. He freely admitted that he gave the gun to the sheriff and that he showed the sheriff where the spent shell casing could be found. The sheriff's testimony otherwise dealt with perfunctory matters entirely—the size and location of the wound, the location of the body, and the time at which the killing was reported. All these facts were corroborated by other witnesses, and were not seriously contested by the appellant. The res gestae statements to which the appellant attaches much importance were of little consequence in terms of the issues raised in this case. The scant testimony as to res gestae statements was uncontroverted, and was not unfavorable to the appellant. Although the sheriff's testimony as to the position of the body did not agree exactly with other testimony,[4] it is difficult to see how that variance had any effect on the jury's verdict.

■ It is fundamental that an impartial and unbiased jury is absolutely essential to our system of jurisprudence. A jury that is free from influences outside the courtroom is essential to a fair and impartial trial. As stated in Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751:

> "In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process."

This protection against external and unwarranted contact with the jury has been zealously guarded by our courts. Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892); Pekar v. United States, 315 F.2d 319 (5 Cir. 1963); Ryan v. United States, 89 U.S. App.D.C. 328, 191 F.2d 779 (1951). Cf. United States v. Harry Barfield Co., 359 F.2d 120 (5 Cir. 1966). But as noted by the late Judge Learned Hand in United States v. Compagna (2 Cir. 1945) 146 F.2d 524, 528, it is " * * * like other rules for the conduct of trials, it is not an end in itself; and, while lapses should be closely scrutinized, when it appears with certainty that no harm has been done, it would be the merest pedantry to insist upon procedural regularity." No less a requirement exists when invoking constitutional sanctions against an otherwise regular state court conviction.[5] Turner v. State of Louisiana does not espouse a more stringent test.

---

4. The sheriff testified that he found the body on the porch with the feet pointing toward the swing, and the head toward the door. He further stated that it did not appear that the body had been moved since the killing. The appellant testified that the body was in a sitting position with the back leaning against the wall, and the feet lying on the porch. A state's witness testified in substantially the same terms as the appellant.

5. In a federal criminal case involving the application of federal procedural and substantive standards, it is entirely possible that a different result could be reached under similar facts and circumstances. Pekar v. United States (5 Cir. 1963) 315 F.2d 319; cf. United States v. Harry Barfield Co., (5 Cir. 1966) 359 F.2d 120.

In Texas, as in many states, the sheriff's department performs both the function of bailiff, and the role of investigator. In this latter capacity, the sheriff or a member of his staff necessarily must testify for the state. Frequently, however, the testimony deals only with the formal aspects of the case, and, as is true in this case, is not substantially controverted. In rural areas, almost necessarily, this same officer will come in contact with the jury in the normal course of a trial. It is often his duty to escort the jury to meals and to stand guard during their deliberations. To assert that *Turner* requires the invalidation of all convictions in which such formal testimony was used is too narrow a construction of its teachings and rationale. The dual role which the sheriff's duties sometimes require of him presents an ever-present and inherent danger of running afoul of the strictures of *Turner* and should be avoided when possible. However, the mere existence of contact between the sheriff and the jurors resulting from the performance of perfunctory duties required by law and the orderly conduct of court is not sufficient in and of itself to invalidate the conviction. We find that the performance by the sheriff of his judicial administrative functions required by state law in the circumstances and under the facts presented in this case does not require the invalidation of the conviction. We are in agreement with the findings and conclusions of the District Court.

## II

■■■ Appellant next complains of the failure of the prosecution to utilize a subpoenaed witness and contends that the testimony of the witness would have been favorable to him.[6] The district court found that the state had no knowledge of the alleged evidence, and further

that the alleged testimony was completely unimportant and would have been merely cumulative. There was substantial evidence to support these conclusions. Without knowledge of the existence of the evidence on the part of the prosecuting attorney, or member of his staff, no suppression exists. Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed. 2d 9; Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791; Ashley v. State of Texas (5 Cir. 1963) 319 F.2d 80; Smith v. United States (5 Cir. 1958) 252 F.2d 369; United States ex rel. Thompson v. Dye (3 Cir. 1955) 221 F.2d 763; United States v. Rutkin (3 Cir. 1954) 212 F.2d 641; Ryles v. United States (10 Cir. 1952) 198 F.2d 199; Annot. 2 L.Ed.2d 1575. This contention of the appellant is without merit.

## III

Appellant's third contention is essentially a two-pronged attack on the denial of the continuance. First, he argues that the state court forced him to go to trial with counsel not of his own choosing by refusing to grant the continuance; and secondly, that Mr. Goodwin, who actively conducted the defense, could not adequately defend him because there was a conflict of interest between his position and his wife's, who Mr. Goodwin was retained to defend.

Both appellant and his wife were indicted for the same offense. Appellant contends that he employed Mr. Wyatt Baldwin, of the firm of Baldwin and Goodwin, and that his wife employed Mr. Goodwin of the same firm. Their trials were set for the same day. When the cases were called, several days before the actual trial began, the case of Mrs. Bowles was first on the docket. Defense counsel wished to try her case first, but the indictment against the wife was dismissed on motion of the state and peti-

6. Although appellant's entire position is dependent on the nature of the evidence allegedly suppressed by the state's failure to call this witness, the appellant did not produce him at the hearing below. The only proof of the evidence is contained in his petition for the writ of habeas corpus, and in his own testimony. The witness in question was the uncle of the wives of both the decedent and the appellant. He was present during most of the trial. There is no showing that he was not available to defense counsel or that his presence was unknown.

tioner's case was called. Mr. Baldwin then filed a motion for a continuance, alleging his ill health and the pregnancy of appellant's wife. Both Mr. Baldwin and Mr. Goodwin were present. The trial court denied the motion. Mr. Goodwin then proceeded to defend the appellant, but with Mr. Baldwin present at the table of defense counsel and giving advice to his partner, Mr. Goodwin. Appellant contends that Mr. Goodwin was in the courtroom solely because his wife's case was called the same day, and that he conducted the case because he felt duty bound as an attorney to defend him. He further asserts that at no time did he consent to Mr. Goodwin's handling of the case.

■ It is virtually uncontested that Mr. Baldwin and Mr. Goodwin frequently worked on difficult cases together. They were partners in the law firm of Baldwin & Goodwin. During the trial of such cases, Mr. Goodwin usually examined the witnesses, while Mr. Baldwin sat at the defense table and advised. This was the procedure used during both the earlier state habeas corpus hearing[7] and in the trial on the merits. At least after the state habeas corpus proceeding and before trial on the merits, appellant was aware of the practice and should have realized that both Mr. Goodwin

and Mr. Baldwin were jointly participating in his defense. We think the evidence is sufficient to support the district court's conclusion that the appellant was not denied his right to be represented by counsel of his own choice.[8]

■■ The assertion that Mr. Goodwin was hampered in his use of the testimony of the appellant's wife in appellant's behalf for fear of implicating her further and causing her to be re-indicted is completely without merit. As a matter of fact she did testify and the record is barren of any indication that there was any holding back of her testimony for fear of endangering her. In the hearing below, Mr. Goodwin asserted that he felt there was no conflict between the wife's and the appellant's defenses. The motion for continuance evinces a pre-trial intent on the part of both Mr. Baldwin and Mr. Goodwin to use her testimony, if possible.[9] We are fully aware of the holdings in our cases of Porter v. United States (5 Cir. 1962) 298 F.2d 461; and Randazzo v. United States (5 Cir. 1964) 339 F.2d 79, but we consider them inapposite and factually distinguishable. We are unable to find the conflict of interest of which the appellant complains.

The judgment is affirmed.

---

7. This hearing was for the purpose of seeking release of appellant on bail. Ex parte Bowles, 166 Tex.Cr.R. 425, 314 S.W.2d 598 (1958).

8. It can not be said that he was forced to proceed with an attorney who was inadequately prepared. Mr. Goodwin had actively participated in the habeas corpus proceeding. The evidence adduced at that hearing was substantially the same as evidence at the trial on the merits. He had consulted with appellant, according to his own testimony, in connection with the wife's case. Mr. Goodwin was as fully aware of the facts, the testimony of the prospective witnesses, and the defenses available to the appellant as was Mr.

Baldwin. At the hearing in the district court Mr. Goodwin testified that he was ready to go to trial on both cases on the day they were called.

9. Under Texas law applicable at the time of the trial in this case, appellant's wife was incompetent to testify in his behalf as long as she was under indictment as a co-principal in the same offense. It was therefore necessary to obtain an acquittal, or to quash the indictment in order for her to testify. The indictment against her had been dismissed before petitioner's trial began. Vernon's Ann.Tex.Pen.Code art. 82, Tex.Code Crim.Proc. § 711 (1925), repealed, Vernon's Ann.Tex.Code Crim. Proc. 38.06 (1965).