**STATE of Missouri, Respondent,**

v.

**Richard William TYARKS, Appellant.**

No. 53524.

Supreme Court of Missouri,
Division No. 2.

Nov. 12, 1968.

Defendant's objection at trial was as follows:

"MR. HOWLETT: Let the record show that counsel for the defendant is continuing to object to the court permitting a witness for the State, to-wit: Deputy Sheriff Wilkes, having custody and continuing to have custody of the jury in his official capacity as deputy sheriff, and continues to request a mistrial.

"THE COURT: Let the record show that the renewed request for a mistrial is denied."

Defendant relies upon Turner v. State of Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424. "The basic teaching of that decision is that when the custodian of the jury who has had continuous and intimate contact with the jury testifies about matters which are more than merely uncontroverted or formal aspects of the case and the credibility of the officer is a factor, then the accused has been denied due process." Crawford v. Beto, 5th Cir., 385 F.2d 156, 157.

Norman H. Anderson, Atty. Gen., Jefferson City, Carl R. Gaertner, Special Asst. Atty. Gen., St. Louis, for respondent.

Shaw, Hanks & Bornschein, by Joseph Howlett, Clayton, for appellant.

DONNELLY, Judge.

Defendant, Richard William Tyarks, was convicted of stealing an automobile under § 560.156, RSMo 1959, V.A.M.S., by a jury in the Circuit Court of Audrain County, Missouri, and his punishment was assessed at imprisonment in the Audrain County Jail for a period of one year. Following rendition of judgment and imposition of sentence an appeal was perfected to this Court.

Defendant contends the trial court erred in permitting Deputy Sheriff Russell Wilkes, who testified as a witness for the State, "to have continuing custody of the jury throughout the trial and until the return of the verdict and over objection of defense counsel."

Deputy Sheriff Wilkes had custody of the jury throughout the trial. However, there is no showing in the record that he "had continuous and intimate contact with the jury." The trial commenced September 13, 1967. The jury returned its verdict at 6:10 p. m. on said date. We cannot say, on the record before us on appeal, that Turner v. State of Louisiana, supra, applies in this case.

In State v. Stidham, Mo.Sup., 258 S.W.2d 620, 622, this Court held that it was not "reversible error to put the jury in charge of the sheriff during its deliberations when he had been a witness for the state." This broad, general rule should no longer be followed. Instead, the standard shall be as hereinafter set forth.

■ We now hold that, as a general rule, it is reversible error to permit an officer, who testifies about matters which are more than merely formal aspects of the case, and whose testimony tends to

prove the guilt of the defendant, to be in charge of the jury.

Article I, Section 18(a) Const. of Mo., 1945, V.A.M.S., assures a defendant in a criminal case "a speedy public trial by an impartial jury of the county."

"The right of trial by jury guaranteed by our Constitution, if it is to be worth anything, must mean, * * * 'the right to a fair and impartial jury.'" Lee v. Baltimore Hotel Co., 345 Mo. 458, 463, 136 S.W.2d 695, 698, 127 A.L.R. 711.

 It is fundamental that jurors shall determine guilt or innocence on the basis of what they hear and observe at trial, in an environment where an accused's rights may be judicially protected. We do not believe the right to an impartial jury can be reconciled with a practice which permits a substantial witness for the State to maintain a custodial relationship with the members of the jury throughout the trial. The relationship is one which, "could not but foster the jurors' confidence in those who were their official guardians during the entire period of the trial." Turner v. State of Louisiana, supra, 379 U.S. 466, 474, 85 S.Ct. 546, 550. The practice should no longer be permitted.

We must next determine whether our ruling should be given retroactive application. See Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601; Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453; Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882; and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

In Stovall v. Denno, supra, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, the Court said: "The criteria guiding resolution of the question implicates (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."

 The purpose to be served by the new standard is to eliminate from criminal trials the possibility that an accused may be deprived of a fair and impartial trial because of a practice which lends itself to the presence of influences extraneous to a proper determination of guilt or innocence. It is exceedingly difficult to confidently say that prejudice does or does not exist in any case wherein the practice is followed. We must recognize, however, that the condemned practice has been followed in trials which may have been fair and impartial and wherein no prejudice resulted.

We also recognize that the practice has been considered acceptable in Missouri and in other jurisdictions. State v. Stidham, supra; 53 Am.Jur., Trial § 858; 23A C.J.S. Criminal Law § 1352. Trial courts in Missouri, in reliance upon good authority, have followed the practice for many years. We must conclude that retroactive application of the new standard "would seriously disrupt the administration of our criminal laws." Johnson v. State of New Jersey, supra, 384 U.S. 719, 731, 86 S.Ct. 1772, 1780.

 We hold that, except for the instant case, the new standard shall apply only to cases in which the trial begins after the date of publication of this opinion in the advance sheet of the Southwestern Reporter.

 We must give defendant Tyarks the benefit of the new standard established in this case. That he be given the benefit is "an unavoidable consequence of the necessity that constitutional adjudications not stand as mere dictum." Stovall v. Denno, supra, 388 U.S. 293, 301, 87 S.Ct. 1967, 1972.

We, therefore, apply the new standard to the facts in this case. According to the evidence, Casper Stuart owned a 1958 Ford automobile on December 9, 1966. That night the automobile was taken from Stuart's Used Car Lot in the City of Mexico, Audrain County, Missouri, was left on a country road for a few days, and was then taken to the Williams' farm. Carl Newsom

testified that defendant took the automobile. Defendant testified that Newsom claimed to be the owner of the automobile and that Newsom took the automobile.

*Deputy Sheriff Wilkes testified, in part, as follows:*

"Q. Please state your name to the Jury.

"A. Russell Wilkes.

"Q. Where do you live, Mr. Wilkes? A. I live in Mexico.

"Q. Are you a member of the Sheriff's staff of this county? A. Yes, sir.

"Q. You are a deputy sheriff? A. Yes.

"Q. I direct your attention back to the date of December 9 and this Ford automobile that we are concerned with in this case and ask you if you made an investigation in the case concerning the automobile? A. Yes, I did.

 \* \* \* \* \* \*

"Q. Will you please tell the Jury what action you took in this matter, what investigation you made?

"A. I went to Martinsburg, Missouri and talked to Carl Newsom and from there I went to the R-6 School and talked to Richard Tyarks and then I went to the Carl Williams home and found this Ford car there \* \* \*.

 \* \* \* \* \* \*

"Q. When did you visit the Williams farm?

"A. I don't recall the date or the day but it was shortly after this investigation started with reference to this automobile.

"Q. Did Carl Newsom accompany you to the Williams farm?

"A. I don't believe so.

"Q. Did you find this missing Ford automobile there at the Williams farm? A. Yes.

"Q. And then what did you do?

"A. I went to the house and talked to Mrs. Williams about the car. She was the only one there.

"Q. Then what did you do?

"A. I waited there until the car was removed from the premises.

"Q. And who removed the car? A. I don't know.

"Q. Where was it taken, if you know?

"A. It was taken to Stuart's Used Car Lot, a DX service station here in Mexico, Missouri.

"Q. And what next was done in your investigation?

"A. Richard Tyarks was arrested and held in the County Jail and charged with stealing this automobile."

*Defendant then testified, in part, as follows:*

"Q. Did he [Carl Newsom] at any time ever give you a title to the car? A. Yes, he did.

"Q. Do you know where that title is now?

"A. I gave it to Ross Vance, or Russell Wilkes. One of the two has it. I don't know which one it was.

"Q. You gave it to who? A. Russell Wilkes. He picked it up from the Williams family. The Williams family had it there.

"Q. Where did you get that title? A. From Newsom."

*Deputy Sheriff Wilkes then testified, in part, as follows:*

"Q. From whom did you receive that title?

"A. From the Williamses.

"Q. The Williamses? A. Yes, I believe Mrs. Carl Williams gave it to me, when I was there investigating this Ford

car that was parked there alongside the fence at their farm, this '58 Ford.

"Q. Then the defendant Tyarks did not give you that title?

"A. No; no, the title was given to me there—the title was given to me at the Jail there. Mr. Henry Paschang, Buck Paschang, about 30 minutes after we arrived at the Jail with the defendant Tyarks here, he drove into the Jail parking area there and Mrs. Williams and Mary Ann Williams was with him, and he had this title, and—

"Q. Who had the title? A. Buck Paschang. I said, 'Buck, where did you get this title?' And he said, 'Well, it's Williamses.' Said, 'Tyarks gave that car to the Williamses, to Mary Ann Williams' and he said, 'Here's the title to it and we want the car.' I said, 'Why, this don't appear to be the title to this particular car—'

"MR. HOWLETT: I object, Your Honor.

"THE COURT: Objection sustained.

"Q. Did it turn out to be the title to the stolen car?

"A. No."

We believe that Deputy Sheriff Wilkes was a substantial witness for the State. He testified that he talked with Newsom and defendant and found the car. He testified as to other phases of his investigation. He controverted defendant's testimony that defendant was given the title to the stolen car. Under these circumstances, we must conclude that he testified about matters which are more than merely formal aspects of the case, and that his testimony tends to prove the guilt of the defendant.

We recognize that had Deputy Sheriff Wilkes testified only as a rebuttal witness there would have been no duty to replace him as custodian of the jury until he testified. He was endorsed as a witness on the information and testified for the State in its case in chief as well as in rebuttal. He should have been replaced when the trial began.

The judgment is reversed and the cause remanded for new trial.

FINCH, P. J., and GODFREY, Special Judge, concur.

EAGER, J., not sitting.