STATE of Missouri, Plaintiff–
Respondent,

v.

Eddie Lee HARRISON, Defendant–
Appellant.

No. 18615.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 26, 1993.

Gary E. Brotherton, Office of the State Public Defender, Columbia, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., for plaintiff-respondent.

SHRUM, Judge.

Defendant Eddie Lee Harrison was convicted by a jury of the class C felony of receiving stolen property, § 570.080, RSMo 1986,[1] and sentenced by the court as a persistent offender to a term of four years with the Missouri Department of Corrections.

Defendant's appeal poses two questions:

(1) whether manifest injustice or a miscarriage of justice resulted from the trial court's failure to declare a mistrial because the Scott County sheriff, who was a witness for the state, took custody of the jurors and escorted them to the jury room to deliberate, and

(2) whether the reasonable doubt instruction, MAI–CR3d 302.04, allowed the jury to convict Defendant based on a degree of proof below that required by the due process clause.

We answer both questions in the negative and we affirm the judgment of the trial court.

## FACTS

Although Defendant does not challenge the sufficiency of the evidence to convict him, his first point on appeal requires a summary of trial testimony.

---

1. The offense is defined in subsection 1 of § 570.-080 as follows:

   A person commits the crime of receiving stolen property if for the purpose of depriving the owner of a lawful interest therein, he receives, retains or disposes of property of another knowing that it has been stolen, or believing that it has been stolen.

Dale White, a Scott County used car dealer, testified that on February 28, 1992, Defendant came to his office. Defendant told White he had a small auto salvage yard, he was "in a bit of a jam," and he had five used rack and pinion steering assemblies he would sell for a total of $125. After White's mechanic described Defendant's offer as "a good buy," White paid Defendant with a check.

Tom Brock, operator of a motor vehicle salvage business in New Madrid County, testified that in February 1992 he became aware that some rack and pinion steering assemblies were missing from a van he kept behind his building. On February 28, he "got word," apparently through a banker, that Defendant, a former employee of Brock, had sold some rack and pinion assemblies to White.

The next day Brock went to White's place of business. "I walked in there and they was in a tow sack, a grass sack, still had my writing on them." Brock said it was his practice to mark all of his rack and pinion assemblies with yellow paint to indicate the automobile's make, model, and year. He said he recognized the writing on the auto parts in the tow sack at White's as that of his employees, saying, "nobody writes like those two."

Later that morning, when Brock saw Bill Ferrell, Scott County sheriff, at a coffee shop, he told the sheriff that he was missing some steering assemblies and they were in a tow sack at White's establishment. That same morning, Ferrell and a deputy went to White's and seized the auto parts. Ferrell located Defendant at his place of employment, Big Red's Auto Parts, Inc., in Haywood City, arrested him, transported him to the Scott County jail, and took a statement from him.

Sheriff Ferrell testified about the contents of the statement he took from Defendant. Defendant obtained the rack and pinion assemblies from a man from Memphis. Defendant had known the man previously, knew his first name was "Phillip," but did not know his surname. Phillip had come to Defendant's residence around 3:30 a.m., apparently on February 28, and told Defendant he had five rack and opinion assemblies for which he wanted $125. After selling the parts to White later that morning, Defendant took White's check to "Stan's," cashed it, and gave the entire proceeds to Phillip. Defendant said he did not know the parts were stolen.

Five witnesses testified on behalf of Defendant. Defendant's employer at the time of the incident, Charles "Big Red" Talley, testified that around 4:00 a.m. on February 28 Defendant telephoned him wanting to sell some rack and pinion assemblies he had obtained from a friend from Memphis. Talley told Defendant he did not need the parts. Talley testified, as did another witness, Bob Lowe, that most salvage yards use the same marking system for parts and that it would be difficult to know from the markings alone whether the rack and pinion assemblies came from Brock's salvage yard.

Defendant's daughter Samantha Hinton and her husband Robert lived with Defendant when the incident occurred. She testified that in the early morning hours of February 28 she was going to the bathroom when she saw someone talking to her father "in the front room." She overheard "something about selling parts." She then went back to bed and to sleep.

Robert Hinton testified that early in the morning of February 28 he and Samantha were in bed when they heard someone "talking about parts." Later that morning Hinton was at his place of employment, an auto repair shop operated by Mike Tatum, when Defendant arrived and attempted to sell some rack and pinon assemblies to Tatum. Tatum was not interested so Defendant enlisted Robert Hinton's help in calling various shops to see if anyone wanted the parts. Defendant then said he "knew somebody," made a phone call, and departed.

Mike Tatum testified that after he declined Defendant's offer to sell him rack and pinion assemblies on February 28 he permitted Defendant and Hinton to use his telephone to try to locate a buyer. Tatum said Defendant told him he got the parts from a man "from Memphis or St. Louis. I can't remember which one it was."

The trial transcript contains this entry, immediately following the recitation of closing arguments:

(Thereupon, at the close of all the evidence and the giving of the instructions by the Court, and at the close of all the arguments made to the jury by counsel for the State and counsel for the defendant, the jury retired to the jury room at 3:04 p.m., in custody of the Sheriff, who was duly sworn to take charge of the same, to consider their verdicts; after due deliberation, said jury returned into open court on the 30th day of November, 1992, at 4:14 p.m., with their verdicts.)

(Jury excused.).

In his motion for a new trial, Defendant alleged the following:

3. The trial court erred to the prejudice of the defendant when it allowed William Ferrell, the Sheriff of Scott County, Missouri, to escort the jury to the jury room for deliberation, after he had testified as the arresting officer in the instant case. The Sheriff's actions violated the oath taken by his deputy, Robert Knight, to keep the jury secluded and away from all involved with the case, until after their deliberation. Due to his political position and the power and respect he carries as sheriff, this gave undue influence as to his credibility and was undue bias to the defendant.

The trial court denied Defendant's motion for a new trial.

## DISCUSSION AND DECISION

### Sheriff as Witness and Bailiff

■ In Point I Defendant contends the trial court committed plain error when it failed, *sua sponte*, to declare a mistrial "when Sheriff Bill Ferrell took custody of the jurors and escorted them to the jury room to deliberate...." [2] Defendant claims the sheriff's actions violated his constitutional rights [3] in that "Sheriff Ferrell was a material witness for the state, whose testimony tended to establish [Defendant's] guilt and did not merely relate to formal aspects of the case."

■ Defendant acknowledges that his failure to object at trial to the sheriff's serving as bailiff left the alleged error unpreserved and reviewable only under the plain error standard. *See, e.g., State v. Sykes*, 628 S.W.2d 653, 655[1, 2] (Mo.1982).[4] *Plain error* and *prejudicial error* are not synonymous terms. *State v. Valentine*, 646 S.W.2d 729, 731[4] (Mo.1983). Relief under the plain error standard is granted only when an alleged error so substantially affects a defendant's rights that a manifest injustice or miscarriage of justice inexorably results if left uncorrected. *State v. Hadley*, 815 S.W.2d 422, 423[1] (Mo. banc 1991). A defendant bears the burden of demonstrating manifest injustice or miscarriage of justice. *State v. Groves*, 646 S.W.2d 82, 83[2] (Mo. banc 1983).

2. We have only the court reporter's trial transcript entry and Defendant's allegation in his motion for a new trial to support the charge that Ferrell "took custody of the jurors." For purposes of this appeal, we assume he did so. Had Defendant objected at trial, a record could have been made to establish the facts. Where, as here, the issue is raised for the first time in a post-trial motion, an affidavit from defense counsel at trial, Sheriff Ferrell, or some other witness would seem advisable.

3. Defendant claims violation of the following: the fifth, sixth, and fourteenth amendments to the United States Constitution and Article I, Sections 10, 18(a), and 22(a) of the Missouri Constitution. He develops an argument related only to Article I, Section 18(a) of the Missouri Constitution, which provides:

That in criminal prosecutions the accused shall have the right to appear and defend, in person and by counsel; to demand the nature and cause of the accusation; to meet the witnesses against him face to face; to have process to compel the attendance of witnesses in his behalf; and a speedy public trial by an impartial jury of the county.

4. As a result of Defendant's failure to object, the trial court, in ruling on the issue in Defendant's new trial motion, was limited to plain error review under Rule 29.12(b), which provides:

Plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom. Our plain error review is pursuant to Rule 30.20, which provides:

Allegations of error that are not briefed or are not properly briefed on appeal shall not be considered by the appellate court except errors respecting the sufficiency of the information or indictment, verdict, judgment, or sentence. Whether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.

Defendant relies on *State v. Tyarks*, 433 S.W.2d 568 (Mo.1968), as authority for his claim that he suffered manifest injustice and a miscarriage of justice as a result of the sheriff's dual role at the trial. Thus we review pertinent facts from that case.

Deputy Sheriff Russell Wilkes had custody of the jury throughout the trial of Richard William Tyarks, accused of stealing an automobile. When Wilkes testified for the prosecution, defense counsel objected and requested a mistrial. The trial court overruled the objection and denied the motion for a mistrial. 433 S.W.2d at 569. The supreme court reversed Tyarks's conviction because of its conclusion that Deputy Sheriff Wilkes's testimony controverted that of the defendant and that Wilkes's testimony tended to prove the guilt of the defendant. 433 S.W.2d at 572[8].

Basing its decision on Article I, Section 18(a) of the Missouri Constitution, the court observed, "We do not believe the right to an impartial jury can be reconciled with a practice which permits a substantial witness for the State to maintain a custodial relationship with the members of the jury throughout the trial." 433 S.W.2d at 570[3]. The court's definition of *substantial witness* appears in the general rule the court enunciated: "[I]t is reversible error to permit an officer, who testifies about matters which are more than merely formal aspects of the case, and whose testimony tends to prove the guilt of the defendant, to be in charge of the jury." 433 S.W.2d at 569[1].[5]

We conclude *Tyarks* does not aid Defendant because we find nothing in the testimony of Sheriff Ferrell that tended to prove Defendant's guilt. Ferrell's testimony about the content of the statement he took from Defendant did nothing more than corroborate defense testimony. Evidence that established the elements of the offense was supplied by other witnesses for the state, not by Ferrell.[6]

Defendant has failed to demonstrate that he suffered manifest injustice or miscarriage of justice as a result of the trial court's failure to declare, *sua sponte*, a mistrial when the sheriff served as bailiff. Point I denied.

*"Reasonable Doubt" Instruction*

■ In his second point on appeal, Defendant claims the trial court erred when it

---

5. *Tyarks* thus sets a stricter standard than does *Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), which condemned "continuous and intimate association" between jurors and sheriff's deputies who were the key prosecution witnesses. 379 U.S. at 473–74, 85 S.Ct. at 550, 13 L.Ed.2d at 429.

6. Cases decided on the basis of an accused's right to an impartial jury under the sixth amendment to the United States Constitution and to due process under the fourteenth amendment assist our consideration of the meaning of "a substantial witness for the State" as that term is used in *Tyarks*. In *Turner v. Louisiana*, the United States Supreme Court summarized the testimony of two sheriff's deputies who were among deputies placed in charge of the jury during a three-day murder trial:

The two principal witnesses for the prosecution at the trial were Vincent Rispone and Hulon Simmons. Both were deputy sheriffs of Tangipahoa Parish. On direct examination Rispone described in detail an investigation he said he had made at the scene of the murder. He further testified that he and Simmons later took Turner into custody, and that Turner had led them to a place in the woods where the cartridge clip from the murder weapon was recovered. Simmons corroborated Rispone's testimony about apprehending Turner and finding the cartridge clip, and also told of certain damaging admissions which he said had been made by Turner at the time of his apprehension. In addition, Simmons described the circumstances under which he said he had later prevailed upon Turner to make a written confession. This confession was introduced in evidence.

379 U.S. at 467, 85 S.Ct. at 547, 13 L.Ed.2d at 426.

*See also Helmick v. Cupp*, 437 F.2d 321, 322 (9th Cir.1971) (Deputy's testimony did not concern the crime itself but was directed to matters about which there was no real issue.); *Crawford v. Beto*, 385 F.2d 156, 157 (5th Cir.1967) (Testimony of deputy sheriff not directed to proving substantive facts of the crime or to bolstering or derogating alibi defense. Rather, deputy's testimony directed to circumstances surrounding the crime and occurrences after arrest. Everything to which the deputy testified that might be classified as more than formal testimony was either corroborated by other witnesses or was uncontradicted.); and *Bowles v. State of Texas*, 366 F.2d 734, 737 (5th Cir.1966) (No serious contradiction between the sheriff's testimony and the appellant's position. The sheriff's testimony otherwise dealt with perfunctory matters, which were corroborated by other witnesses and were not seriously contested by the appellant.).

submitted Instruction No. 4, patterned after MAI–CR3d 302.04, which defines "proof beyond a reasonable doubt" as "proof that leaves you firmly convinced of the defendant's guilt." He contends the definition allowed the jury to convict him "based on a degree of proof that was below that required by the due process clause."

The Missouri Supreme Court has held that the "firmly convinced" language does not lower the proof required of the state in criminal cases to something less than "proof beyond a reasonable doubt." *State v. Antwine*, 743 S.W.2d 51, 62–63 (Mo.banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). In *State v. Griffin*, 848 S.W.2d 464, 469[8] (Mo. banc 1993), the court reaffirmed its holding in *Antwine* after consideration of *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), relied on here by Defendant.[7] Point denied.

We affirm the judgment of the trial court.

PARRISH, C.J., and MONTGOMERY, J., concur.

---

**7.** Defendant calls our attention to *Sullivan v. Louisiana*, 508 U.S. ——, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), in which the Court held that a constitutionally deficient instruction defining "reasonable doubt" may not be considered harmless error. Because the definition at issue in *Sullivan* was conceded by the state of Louisiana to be "essentially identical to the one held unconstitutional in *Cage*," 508 U.S. at ——, 113 S.Ct. at 2080, 124 L.Ed.2d at 187, *Sullivan* has no bearing on this appeal.