**STATE of Missouri, Respondent,**

v.

**Teddy J. BLEVINS, Appellant.**

**No. SD 31862.**

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 17, 2012.

Rosalynn Koch, Columbia, for Appellant.

Chris Koster, Atty. Gen., Jessica P. Meredith, Asst. Atty. Gen., Jefferson City, for Respondent.

DANIEL E. SCOTT, P.J.

We consider whether a deputy's limited contact with jurors, before whom he later testified as a prosecution witness, necessitated a mistrial. The trial court determined otherwise and, as we conclude, did not abuse its discretion in so ruling. Thus, we reject the sole point on appeal and affirm appellant Blevins' convictions.

## Background

Deputy Clay Jeffries, on patrol, saw Blevins' truck go by. Aware that Blevins' license was revoked, the deputy followed and activated his lights. Before the truck stopped, a loaded pistol was tossed out the passenger window.

Blevins was driving. Carrie Messick was beside him. Blevins' daughter was in back. When Deputy Jeffries inquired, no one claimed the pistol. Blevins and Messick, each a multi-felon, were transported to jail separately for questioning.

When questioned, Messick essentially claimed that Blevins had kidnapped and forced her at gunpoint to aid him in theft attempts earlier that night. She directed Deputy Jeffries to those sites, pointing out allegedly corroborating evidence.

Blevins was charged with kidnapping, unlawful gun possession by a felon, and driving without a license as class B, C, and D felonies respectively.[1] Messick was the first trial witness. At a break in her testimony, the court made a record outside the jury's presence:

> [I]t was brought to my attention that Clay Jeffries, a deputy with Cedar County, endorsed witness, has been helping watch the jury door or I'm not sure what. But that can be something that causes the Court concern or needs to be remedied. And so I told the attorneys about that and we've decided, without telling the deputy, that we're going to bring him in here to ask him some

---

1. *See* §§ 565.110, 571.070, & 302.020 RSMo, as amended through 2008.

questions, that we'd make a record on this.

And so I—the Court can inquire, or the attorneys can inquire of the deputy of his role this morning, and then the Court can see what rulings it needs to make.

After questioning Deputy Jeffries,[2] and without casting blame for "one of those things that just kind of happened," defense counsel sought a mistrial, asserting that a deputy who "is certainly going to testify for the prosecution has acted in the role of protector or guardian of the jury. And I think that might add to his credibility which is unfair to the defense." The court denied the mistrial request, but directed that the deputy have no further contact with jurors.

Jurors took just 20 minutes, following prosecution testimony by Messick and

Deputy Jeffries and defense testimony by Blevins' daughter, to acquit Blevins of kidnapping and find him guilty of the two lesser charges.

Blevins' new trial motion unsuccessfully reiterated his argument for a mistrial. He persists in this claim on appeal.[3]

## Standard of Review/Analysis

 Courts use the drastic remedy of mistrial only in extraordinary circumstances to cure grievous prejudice which cannot otherwise be remedied. *State v. Norman,* 243 S.W.3d 466, 470 (Mo.App. 2007). We review the failure to grant a mistrial for abuse of discretion; we will reverse only if the ruling was so illogical, arbitrary, and unreasonable "as to shock the sense of justice and indicate a lack of careful consideration." *Id.* at 470–71.

---

2. Only defense counsel chose to examine the deputy. We quote that testimony in its entirety:

Q. Mr. Jeffries, you're here as a subpoenaed witness in the case of State v. Teddy Blevins here today; is that correct?
A. Yes.
Q. And you were, I believe, the arresting officer or one of the arresting officers in this case?
A. Yes.
Q. I think you spoke with both Mr. Blevins and Ms. Messick at the time and later, correct?
A. Yes.
Q. And you anticipate testifying here today?
A. Yes.
Q. And this morning you have been assisting with the jury?
A. Kind of, yes.
Q. Okay. Did you do so yesterday during the selection process?
A. No.
Q. Okay. So it's only been this morning.
A. Yes.
Q. Okay. Could you tell us what you did to assist with the jury this morning?
A. I was in the prosecutor's office and they told me I needed to make sure nobody talked to or went into the jury room.

Q. Okay. In other words, you stood outside the door and kept people from going into—
A. Yes.
Q.—the jury? Did you do anything else?
A. When they just now broke, I stood at the hallway and made sure nobody else talked to them or they got lost and went back to the jury room.
Q. Do you believe the jury saw you standing there by the door, guarding the door?
A. Yes.
Q. No question about that?
A. No.
Q. Okay. Did you say anything to the—to the jurors?
A. I asked if they were all back, I believe.
Q. So you spoke to them about just procedures and—
A. Numbering—
Q. making sure they're all together and whatnot?
A. Yes.

3. We do not, however, consider additional or changed arguments for mistrial not urged in the trial court. *See State v. Davis,* 348 S.W.3d 768, 770 (Mo. banc 2011).

This standard, applied to this record, warrants summary affirmance absent a persuasive case to the contrary. Blevins suggests two.

*Turner v. Louisiana,* 379 U.S. 466, 473–74, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), which condemned "continuous and intimate association" of jurors with deputies who were key prosecution witnesses, is readily distinguished. Deputy Jeffries' juror contact was neither continuous nor intimate as shown by Blevins' second cited case, *State v. Tyarks,* 433 S.W.2d 568 (Mo.1968).

The complaint in *Tyarks* was testimony by a deputy with continuing custody of the jury throughout trial and until return of the verdict. *Id.* at 569. Despite the deputy's "custody of the jury throughout the trial," our supreme court found *Turner* inapplicable without record proof of "continuous and intimate contact." *Id.* The court reversed, nonetheless, citing our state constitution and declaring that a substantial State witness cannot "maintain a custodial relationship with the members of the jury throughout the trial," so "as a general rule, it is reversible error to permit an officer, who testifies about matters which are more than merely formal aspects of the case, and whose testimony tends to prove the guilt of the defendant, to be in charge of the jury." *Id.* at 569–70.

Just as *Tyarks* was distinguishable from *Turner,* this case is distinguishable from both. Deputy Jeffries did not have "continuing custody of the jury," was not "in charge of the jury," and did not "maintain a custodial relationship with the members of the jury throughout the trial." This alone puts him outside the rule in *Tyarks,* let alone *Taylor.*[4]

Moreover, Deputy Jeffries' credibility was not at issue on the two charges that resulted in convictions. The driving offense was virtually confessed by the defense, which focused instead on the more serious felonies.[5] On the gun charge, Blevins stipulated that he was a felon. Only one element remained—that Blevins possessed the pistol—of which Deputy Jeffries had no personal knowledge.

 By its nearly instant verdicts, the jury plainly believed Messick about the gun while rejecting her kidnap claim, with the driving charge a slam dunk. Thus moots counsel's stated concern, in seeking a mistrial, that Deputy Jeffries' juror contact "might add to his credibility which is unfair to the defense." Because such credibility was at issue (if at all) only on the charge that resulted in acquittal, Blevins cannot carry his burden of showing prejudice; *i.e.,* a reasonable probability that any error affected the trial's outcome. *State v. Turner,* 367 S.W.3d 183, 188 (Mo. App.2012).

### Conclusion

Finding neither prejudice nor abuse of discretion, we affirm the convictions.

JEFFREY W. BATES, J., and DON E. BURRELL, C.J., concur.

4. *Tyarks* sets the stricter standard. *State v. Harrison,* 864 S.W.2d 387, 390 n. 5 (Mo.App. 1993).

5. The defense stipulated to most, and contested none, of the elements of driving without a license. Defense counsel's opening statement predicted that jurors would find Blevins "not guilty of kidnapping and not guilty of unlawful possession of a concealable firearm." Similarly, he argued in closing that "Teddy Blevins should be found not guilty of kidnapping and Teddy Blevins should be found not guilty of unlawful possession of a firearm." Blevins' daughter testified that "he was screaming about driving on a revoked. He was getting ready to go to jail."