MICHAEL MARTIN BOONE AND PAUL HARVEY BALDWIN, APPELLANTS, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 5678

July 14, 1969                                    456 P.2d 418

*Fry and Fry,* of Reno, for Appellants.

*Harvey Dickerson,* Attorney General, *William J. Raggio,* District Attorney, and *Virgil D. Dutt,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

A jury found Michael Martin Boone and Paul Harvey Baldwin guilty of attempted robbery. They seek a reversal on four

grounds: (1) the trial judge erred in permitting two witnesses to the crime to make in-court identifications of Boone and Baldwin; (2) Boone's sweater, State's Exhibit "F", was improperly received in evidence; (3) the victim's reference to her assailants as "dirty Niggers" constituted prejudicial error for which a motion for a mistrial should have been granted; and (4) the trial judge erred in charging the jury.

On the morning of July 25, 1967, Elsie Bayley went to the First National Bank at the corner of First and South Virginia Streets in Reno, where she made her customary weekly bank deposit. She was walking back to her home on California Avenue and was on the east side of the 300 block on South Sierra Street when she was attacked by two men who grabbed the bag she was carrying. Although Elsie Bayley was then in her eighty-third year, she successfully resisted her attackers and never gave up the bag; but during the struggle she was struck and thrown to the pavement and suffered several bone fractures.

It was at this juncture that George Hogan and his son, Dennis Hogan, came driving by and witnessed the assault. They sensed immediately what was going on, sounded their car horn, and "took after" the two attackers, who ran "like scared rabbits" down an adjacent alley. Another passer-by came to Mrs. Bayley's aid, helped her to the sidewalk, brought her a chair to sit on, called the police, and made the reference to her assailants that is the basis for appellants' fourth assignment of error, supra. The Hogans gave pursuit in their car, but only for a short distance, as the two assaulters split up, running in different directions over vacant property. Dennis left the car and followed on foot the defendant who was later identified as Boone, while George, still driving the car, observed the defendant who was later identified as Baldwin attempt to enter a red Mustang automobile. Baldwin was "waved off" by the driver of the Mustang and continued his flight on foot. George then lost sight of Baldwin, but in a few moments saw him driving the Mustang, and again took up the chase, which he pursued without success, although he did take down the license number of Baldwin's car and give it to a passing patrolman. A few moments later the police stopped the Mustang and arrested Baldwin. Meanwhile, Dennis was in hot pursuit of Boone, chasing him across car lots and over back fences. But Boone finally outdistanced him, and Dennis joined the search in a police car. Actually, Boone had evaded his pursuers by checking into a nearby motel. The desk clerk's suspicions were aroused by Boone's appearance and actions: "[H]e was perspiring very freely, and breathing very deep . . . fidgety . . . he

was in a hurry." When she noticed a commotion outside the motel, she inquired of a policeman who was on the street the reason for the presence of the police. When told, she remarked, "I think he's [Boone's] looking down at you from the room upstairs, sir." The officer went to Boone's room, arrested him, and brought him downstairs, where he was immediately identified by Dennis as the man who had attacked Mrs. Bayley.

1. The trial judge did not err in permitting two witnesses to the crime to make in-court identifications of Boone and Baldwin. On the evening of the robbery, the Reno police conducted a routine police line-up and asked the Hogans to be present. Boone and Baldwin were included in the line-up and were identified. The line-up appears to have been properly conducted, with one major exception: Boone and Baldwin were not represented by counsel. They claim they requested counsel.

On June 12, 1967, six weeks prior to the line-up, the Supreme Court of the United States ruled in the landmark Wade, Gilbert, and Stovall cases,[1] that the Sixth Amendment to the Constitution guarantees an accused the right to counsel, not only at his trial, but also at any critical confrontation by the prosecution at pretrial proceedings where the absence of counsel might derogate from his right to a fair trial and where the results might well determine his fate. In Wade, supra, the High Court declared that a police line-up is a critical stage of the pretrial proceedings and that an in-court identification by a witness to whom the accused was exhibited before trial in the absence of counsel must be excluded, unless it can be established that the identification had an independent origin. Because of the rulings announced in Wade, Gilbert, and Stovall, supra, the police line-up of July 25, 1967, was illegal, and the State did not present to the jury any evidence regarding the line-up identifications. But we do not rule as a matter of law that the line-up identifications rendered incompetent the Hogans' in-court identifications of Boone and Baldwin. Rather, we hold that there is substantial evidence in the record to support the trial judge's findings that the Hogans' identifications of the appellants (1) had independent origins, (2) were not tainted by the police line-up identifications, and (3) were therefore admissible. For instance, the record shows that Dennis first met Baldwin at 7 o'clock on the morning of the robbery, in Harrah's Club, Reno, where Dennis worked as a cashier, and that

[1]United States v. Wade, 388 U.S. 218 (1967); Gilbert v. California, 388 U.S. 263 (1967); and Stovall v. Denno, 388 U.S. 293 (1967).

Dennis assisted Baldwin in completing a credit application form; that he saw Boone during the commission of the crime "from head to foot"; that he chased Boone until Boone evaded him and checked into the motel; and that when the officer arrested Boone in the motel room and, brought him to the ground floor, Dennis was present and identified Boone.

Cross-examination of Dennis Hogan by Mr. Fry, counsel for defendants (appellants herein):

"Q.   Well, isn't it true that you, at first, did not recognize Mr. Boone and did not identify him?

"A.   No, it is not true. When he came down, I said 'That's the man I was chasing.'

"Q.   Right off the bat?

"A.   Right off the bat."

George Hogan identified Mr. Baldwin only. He saw him during the commission of the crime and pursued him by car. During the chase, George observed Baldwin driving the Mustang and saw him at close range at one street intersection when they came face to face in their cars.

Cross-examination of George Hogan by Mr. Fry:

"Q.   And then you followed it [the Mustang]?

"A.   Then I started to go down California, and the car apparently turned. Now, I felt that he was going to make a U turn. It was just a feeling that I got.

"So I made a U turn at the service station at the corner of Sierra and California. The car came back, the Mustang came back on California and turned down Forest. By this time, I was out on Sierra Street. And when the signal changed, I followed the car down Forest and Tahoe, and then St. Lawrence.

"Q.   And it was then that you—

"A.   At St. Lawrence and Virginia is when I saw the man."

Counsel for the appellants argues that George Hogan had only "one good look" at Baldwin and that his in-court identification of Baldwin was not permissible. We do not agree. "One good look" only, does not as a matter of law render the witness's testimony incompetent. We conclude that there is substantial evidence in the record to support the trial judge's findings that Dennis's identifications of Boone and Baldwin, and George's identification of Baldwin, had independent origins and that their in-court testimony before the jury was permissible.

2.   Boone's sweater, State's Exhibit "F", was properly received in evidence. When the officer arrested Boone in the

motel room, he seized a brown sweater that was on a chair in the room. The sweater was received in evidence. Boone claims its admission was not permissible because the search was illegal. NRS 171.124[2] provides that a peace officer may make an arrest without a warrant when a felony has in fact been committed and he has reasonable cause to believe the person arrested has committed it. The arresting officer knew that an assault had occurred in an attempted robbery, and he had reasonable cause to believe that Boone was one of the assailants. Boone's arrest was legal. It was permissible for the officer, once he was inside Boone's room, to seize Boone's sweater, as it was in plain view and it filled the description given by Dennis Hogan. The Supreme Court of the United States said, in Harris v. United States, 390 U.S. 234, 236 (1968): "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. *Ker* v. *California,* 374 U.S. 23, 42–43 (1963); *United States* v. *Lee,* 274 U.S. 559 (1927); *Hester* v. *United States,* 265 U.S. 57 (1924)." Woerner v. State, 85 Nev. 281, 453 P.2d 1004 (1969).

3. The trial judge did not commit error in denying appellants' motion for a mistrial. Elsie Bayley was unable to identify her assailants, and she flatly admitted so.

Direct examination of Mrs. Bayley by Mr. Freitag, counsel for plaintiff (respondent herein):

"Q. Now, do you recall what either of these people looked like?

"A. I couldn't, for the life of me, identify who they were or anything. I just was so frightened that I didn't see anything."

In an apparent attempt to pursue the inquiry further, defense counsel asked Mrs. Bayley on cross-examination the questions that brought forth the answer that appellants claim created prejudicial error.

Cross-examination of Mrs. Bayley by Mr. Fry:

"Q. Do you recall, or can you give the ladies and gentlemen of the jury any description of these people at all?

"A. No, I couldn't describe them to save me, because I—

"Q. You are not sure whether they were Caucasion, Negro, Indian, or what?

---

[2]NRS 171.124 Arrests by peace officers.
1. A peace officer . . . may, without a warrant, arrest a person:
. . . .
(c) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

"A. I couldn't, except that I had just passed a colored boy down the street, and he came and helped me up. He said, 'Those dirty Niggers.' "

While such utterances are abhorred and to be avoided, this one was made without any malice by Elsie Bayley, and only in her attempt to respond to counsel's inquiry. As the trial judge said, in denying the motion for a mistrial:

"Well, I felt at the time it was not a really bad statement. . . . We feel these things. If I felt that the statement that Mrs. Bayley made . . . was maliciously made, or if I felt that it was purposely made to place the defendants in a bad light before the jury, then I would say that the defendants' motion for a mistrial is properly made. . . . I didn't think that the jury became inflamed or incensed by the res gestae statement, if you want to call it that, happening upon the spur of the moment."

The trial judge did not abuse his discretion in denying appellants' motion for a mistrial.

4. The trial judge properly charged the jury. Appellants objected to the giving of Instructions Nos. 9[3] and 15.[4] The former defines the crime of robbery; the latter covers the defendants' flight from the scene of the crime. Under the facts of the case, it was proper to give the instructions.

Affirmed.

COLLINS, C. J., ZENOFF, BATJER, and THOMPSON, JJ., concur.

---

[3]Instruction No. 9:

Robbery is the felonious taking of personal property of any value in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.

[4]Instruction No. 15:

The flight or concealment of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by the jury in the light of all other proved facts in deciding the question of his guilt or innocence. Whether or not evidence of flight or concealment shows a consciousness of guilt, and the significance if any to be attached to such a circumstance, are matters for determination by you, the jury.