WILTON EARL ALLEN, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 7036

January 29, 1975                                        530 P.2d 1195

*Morgan D. Harris,* Public Defender, and *Sherman H. Simmons,* Deputy Public Defender, Clark County, for Appellant.

*Robert List,* Attorney General, Carson City; *George Holt,* District Attorney, and *Charles L. Garner,* Deputy District Attorney, Clark County, for Respondent.

**O P I N I O N**

By the Court, BATJER, J.:

On September 23, 1971, Bobbie Ann Allen and James Phillips were shot to death in the parking lot of Jerry's Nugget Casino in North Las Vegas, Nevada. Bobbie Ann was the wife of appellant, and James Phillips was her paramour.

Appellant and Bobbie Ann had been husband and wife for approximately 10 years prior to the date of the shooting. However, Bobbie Ann had initiated divorce proceedings, and the record indicates that for a period of approximately five years prior to the shooting there had been marital difficulties between them.

The day of the shooting Bobbie Ann drove to work and thereafter related to a fellow employee that she had had a rough time with appellant the night before and was not going home after work. The hearing for divorce was scheduled the next day.

Before their deaths, Bobbie Ann and Phillips had exchanged cars. Near the end of Bobbie Ann's shift, appellant went to Jerry's Nugget ostensibly to ride home with her. There he saw Phillips waiting in Bobbie Ann's car, so he went to the car, got in and sat down. When Bobbie Ann came into the parking lot she approached the side of the car occupied by Phillips and the three of them engaged in conversation. Appellant then got out of the car and purportedly walked around to Bobbie Ann to console her. Appellant testified that Bobbie Ann then pulled a gun, and as they struggled it discharged, killing Phillips. Appellant claims that he cannot recall what happened next, and does not remember the two shots which killed Bobbie Ann. There were no eyewitnesses to the shooting. The Pathologist reported no powder burns on either of the victims.

Appellant testified that he moved Bobbie Ann's body so he would not have to back the car over her as he left. A security guard responding to the shots and screams entered the parking lot, recognized the appellant, and the car, and took down the license number. Appellant drove to Glendale, Nevada, where he left the car at a service station and then hitchhiked back to Las Vegas. He testified that he returned to Jerry's Nugget, made inquiry, and upon being informed that there had been a shooting, hitchhiked into Arizona by way of Hoover Dam. He claims that during a brief stop at the damsite he threw the gun over the dam. It was never recovered.

Later appellant arrived in Amarillo, Texas, where he phoned his mother and arranged for his sister to go to Las Vegas to care for his children. He then hitchhiked back to Las Vegas with several young runaways from Texas, arriving in Las Vegas early on the morning of September 27, 1972. Las Vegas police, who had his house under surveillance, arrested him.

Appellant, given the warning required by Miranda v. Arizona, 384 U.S. 436 (1966), was asked the whereabouts of his

car. He revealed that it was parked in Glendale, Nevada. The officer who was dispatched to recover the car found it, placed evidence seals on the trunk lid and all doors, and had it towed back to Las Vegas where it was searched pursuant to warrant, and photographed. The search revealed two small pistols. The pistols and photographs became the basis of a motion to suppress, which attacked the sufficiency of the affidavit supporting the search warrant. Although the trial judge concluded that the affidavit was defective, he denied the motion because he determined that the car had been abandoned and appellant had no standing to complain about the search.

1. In order to have standing to object to a search, the aggrieved party must be the one against whom the search has been directed. Dean v. Fogliani, 81 Nev. 541, 407 P.2d 580 (1965). Appellant clearly qualified in this regard. See also, Jones v. United States, 362 U.S. 257 (1960), and Gebert v. State, 85 Nev. 331, 454 P.2d 897 (1969).

The abandonment theory may be questioned. The car was located, through information supplied by the appellant on the premises of a Glendale service station. Cases cited by respondent to support the abandonment theory are clearly distinguishable from this case. In Laws v. State, 251 A.2d 237 (Md. 1969), a car punctured by bullets during flight from an armed robbery was found, through police description, on a public street with no license plates. See People v. Smith, 409 P.2d 222 (Cal. 1966), cert. denied 388 U.S. 913 (1967).

However, even assuming the motion to suppress should have been granted (Mapp v. Ohio, 367 U.S. 643 (1961); Barnato v. State, 88 Nev. 508, 501 P.2d 643 (1972)), the admission of the evidence was harmless beyond a reasonable doubt in light of appellant's own testimony relative to the shooting and his disposal of the murder weapon. Harrington v. California, 395 U.S. 250 (1969); Chapman v. California, 386 U.S. 18 (1967); Rhodes v. State, 91 Nev. 17, 530 P.2d 1199 (1975). Cf. Schneble v. Florida, 405 U.S. 427 (1972).

2. Appellant next asserts that the district court committed error in admitting the hearsay testimony of Joyce Kirchner, a fellow employee of Bobbie Ann's, who testified to a conversation which she had overheard on the day of the murder between Bobbie Ann and appellant. Inasmuch as there was no

objection by defense counsel at the time the testimony was given, we decline to consider the assigned error, which was raised for the first time on appeal. Sherman v. State, 89 Nev. 77, 506 P.2d 417 (1973); Bonnenfant v. State, 86 Nev. 393, 469 P.2d 401 (1970).

3. Appellant also contends that the district court erred by admitting into evidence color photographs of the victims, which he claims were taken after autopsies were performed. The record clearly shows that they were taken prior to the autopsies. Color photographs of a victim used by a doctor to explain the cause of death to a jury are properly admissible because they aid in the ascertainment of truth. The probative value of the photographs outweighs any prejudicial effect they might have on the jury. Shuff v. State, 86 Nev. 736, 476 P.2d 22 (1970); Summers v. State, 86 Nev. 210, 467 P.2d 98 (1970); Walker v. State, 85 Nev. 337, 455 P.2d 34 (1969); Wallace v. State, 84 Nev. 603, 447 P.2d 30 (1968).

4. On the night of the shooting, police officers went to the Allen residence to search for appellant and to inquire about the welfare of the couple's minor children. Appellant was not there but the young children were at home unattended. The officers dressed the children prior to taking them to Child Haven, a child care facility for neglected and abandoned children in Las Vegas. While gathering clothes for the children, the officers found two gun boxes in a dresser in the master bedroom. One was for a gun purchased by Bobbie Ann in South Carolina in July of 1968; the other for a gun which was never found.

Appellant asserts that it was reversible error to allow the testimony regarding the gun boxes. The trial court ruled that the officers were properly on the premises to take the children into custody and thus could seize evidence in "plain view."

The record does not support the "plain view" position of the trial judge, and the admission of the testimony regarding the gun boxes was error. Again the error was harmless beyond a reasonable doubt in light of appellant's own testimony relative to the shooting and his disposal of the murder weapon. Harrington v. California, supra; Chapman v. California, supra; Rhodes v. State, supra. Cf. Schneble v. Florida, supra.

5. Likewise, the unsolicited testimony of one of the juveniles from Texas, with whom the appellant hitchhiked back to Las Vegas, was not prejudicial. While on the stand the youth blurted out that he and the appellant had a conversation about appellant's having written some "hot checks." The trial court immediately admonished the jury and permitted direct examination to continue. Then after a brief cross-examination by defense counsel he moved for a mistrial, which was denied.

Relying on Fairman v. State, 83 Nev. 137, 425 P.2d 342 (1967), and Nester v. State, 75 Nev. 41, 334 P.2d 524 (1959), appellant contends this was reversible error. Such reliance is misplaced. In *Fairman* the prosecutor offered evidence of a separate act of sale and possession of a narcotic, and the conviction was reversed. In *Nester* evidence of another rape was allowed into evidence to establish the identity of the defendant on the rape charged, and his conviction was upheld.

Here there was no more than an inadvertent hint of another criminal activity and it was not solicited by the prosecution, but rather blurted out by a witness. The jury was immediately admonished to disregard the youth's statement. The admonition by the trial court adequately cured the error. Cf. Donnelly v. DeChristoforo, 416 U.S. 637 (1974); Boley v. State, 85 Nev. 466, 456 P.2d 447 (1969); Boone v. State, 85 Nev. 450, 456 P.2d 418 (1969); Baker v. State, 89 Nev. 87, 506 P.2d 1261 (1973).

6. Appellant next contends that his defense was severely prejudiced by testimony and exhibits relating to his purchase of a gun which was not the murder weapon. The record shows that this evidence was stricken by the court upon a defense motion after the prosecution had failed to show its relevance. Appellant cites no authority for this assignment of error, and we need not consider it. Williams v. State, 88 Nev. 164, 494 P.2d 960 (1972).

7. There is no basis in the record for appellant to claim that defense counsel was incompetent, and we find the claim totally without merit. Smithart v. State, 86 Nev. 925, 478 P.2d 576 (1970). Cf. Founts v. Warden, 89 Nev. 280, 511 P.2d 111 (1973).

The credibility and weight to be given to testimony are

matters resting within the province of a jury. The state presented a strong case to support a verdict for second degree murder, which we affirm. Layton v. State, 87 Nev. 598, 491 P.2d 45 (1971); Garner v. State, 78 Nev. 366, 374 P.2d 525 (1962); Harris v. State, 88 Nev. 385, 498 P.2d 373 (1972).

GUNDERSON, C. J., and ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.