JESSIE EYLER DEARMAN, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 9209

July 1, 1977

566 P.2d 407

*Morgan D. Harris,* Public Defender, and *Stephen L. Huf-
faker,* Deputy Public Defender, Clark County, for Appellant.

*Robert List,* Attorney General, Carson City; *George E.
Holt,* District Attorney, and *H. Leon Simon,* Deputy District
Attorney, Clark County, for Respondent.

## OPINION

By the Court, MANOUKIAN, J.:

This is an appeal from a judgment of conviction wherein Appellant was found guilty, by jury verdict, of the crime of first degree murder. (NRS 200.010; 200.030.) The trial judge thereafter sentenced him to life imprisonment with the possibility of parole.

Dearman was convicted of the murder of one Dennis Wolfe. The homicide occurred at approximately 8:30 p.m., on December 31, 1974, in a North Las Vegas, Nevada, bar and restaurant known as Cal's Gin Mill. It was undisputed at the trial that Dearman shot Wolfe seven times with a .45 caliber automatic pistol at close range. The shooting was observed by several patrons of the establishment who knew both the victim and the Appellant. Dearman's only defense presented at trial was that he was under the influence of a combination of alcohol

and drugs at the time of the shooting and therefore could not form the necessary intent to commit the crime of first degree murder.

Appellant has raised three specifications of error for our determination. (1) The evidence is insufficient to support the conviction of first degree murder; (2) Improper and prejudicial statements made by the prosecutor during his closing argument affected the substantial rights of the defendant; (3) The Court erred in admitting Exhibits 4, 7, and 8 (color photographs of the victim) into evidence over objection of defense counsel.

1. *The Evidence is Insufficient to Support a Conviction of First Degree Murder:*

Here, Appellant asserts that the State did not present sufficient evidence to prove beyond a reasonable doubt that he was capable of forming the premeditation necessary to support a conviction of first degree murder. We disagree.

Dearman took the stand at trial and testified that he could not remember anything contemporaneous with the shooting, or thereafter, until waking up the next day in a park in California. He also testified that in addition to the alcohol that he had consumed throughout the day, he had ingested two pills, possibly barbiturates, just prior to going to the scene of the shooting. Dearman's mother, Delores Hutchens, testified that he was drunk at about 6:30 p.m., and that she had never seen him drink so much.

That Appellant had been drinking heavily since approximately 1:00 p.m., the afternoon of the incident is undisputed. However, it is the evidence of the degree of such intoxication which is conflicting. During the trial, witnesses testified that the decedent and Appellant each consumed several drinks from 1:00 p.m. to 6:30 p.m. on the day of the incident. Other evidence offered at trial showed that on two occasions the Appellant was capable of driving an automobile without incident, that during the relevant periods of time the Appellant was capable of carrying on and understanding a normal conversation, that he was capable of playing pool, that he knew the location of Cal's Gin Mill as he drove to that location from his home accompanied by his mother and a friend approximately one half hour prior to the shooting, that prior to the shooting he had been playing "21", and that at no time prior to the shooting did anyone notice anything out of the ordinary about the Appellant other than that he was to some degree intoxicated.

There was also testimony from which the jury could have

reasonably inferred that Appellant had left the bar a few minutes prior to the shooting for the express purpose of obtaining the murder weapon.

William Glenn, an acquaintance, characterized Dearman as being "pretty looped", shortly after the shooting, but added that there was nothing about his manner that would indicate any unusual degree of intoxication.

The record further reveals that immediately following the shooting Appellant walked "briskly" out of the bar, entered his automobile, and drove at a high rate of speed out of the parking lot from where the vehicle was located. The jury could have reasonably inferred that these actions taken by the Appellant immediately after the shooting were for the purpose of effecting an escape from the scene, and further, that the Appellant knew at the time of the shooting that the act was wrong.

It is well established in Nevada that "it is the function of the jury and not the reviewing court to weigh the evidence." McGuire v. State, 86 Nev. 262, 267, 468 P.2d 12, 15 (1970). It is also well recognized that "where there is substantial evidence in the record to support the verdict of the jury, it will not be overturned by an appellate court." Tellis v. State, 85 Nev. 679, 680, 462 P.2d 526, 527 (1969). *See also,* McGuire v. State, 86 Nev. 262, 468 P.2d 12 (1970).

"In this state it is well-recognized that in a prosecution for murder evidence of the intoxication of the accused is relevant for the purpose of a jury determination whether the defendant lacked the capacity to deliberate and premeditate required of first degree murder." Jackson v. State, 84 Nev. 203, 206, 438 P.2d 795, 797 (1968). Intent to kill, as well as premeditation, may be ascertained or deduced from the facts and circumstances of the killing, such as use of a weapon calculated to produce death, the manner of use, and the attendant circumstances. *See* Moser v. State, 91 Nev. 809, 544 P.2d 424 (1975). Here, the jury had such evidence presented for its consideration and further heard evidence of Appellant's speech, demeanor, and movement. Although the evidence is conflicting, the jury was at liberty to believe whichever witnesses it found most credible. *Id.* We perceive no error that would require a reversal of the jury's verdict on this issue, in that a finding of willful, deliberate, and premeditated killing was permissible

despite the defendant's claim of intoxication. *In accord,* Kuk v. State, 80 Nev. 291, 392 P.2d 630 (1964).

2. *Improper and Prejudicial Statements Made by the Prosecutor in Closing Argument Affected the Substanital Rights of the Defendant:*

Dearman contends that he was deprived of a fair trial by improper and prejudicial prosecutorial closing argument. In one instance, the prosecutor submitted his own subjective belief concerning his responsibility as a prosecutor and reverence for life.[1] On another occasion, the prosecutor's argument dealt with the prosecutor presenting his personal views on mercy and justice.[2] In a third instance, it is claimed that the prosecutor attempted to arouse and inflame the passions of the jury by using an emotional argument concerning the decedent's not being able to keep New Year's resolutions or being able to see the roses bloom in spring.[3]

Although the comments made by the prosecutor may have been improper, a reading of the record reveals that at no time were any objections made by Appellant. It is well established that improper remarks made by the prosecutor in closing argument will not be considered on appeal if not objected to at the time of trial. Watkins v. State, 93 Nev. 100, 560 P.2d 921 (1977); Jackson v. State, 93 Nev. 28, 559 P.2d 825 (1977); Moser v. State, 91 Nev. 809, 544 P.2d 424 (1975). This Court stated in Jackson, 93 Nev. 28, 30, 559 P.2d 825, 826 (1977):

> Jackson's contention that the prosecutor committed prejudicial error in his closing argument is also rejected. The now challenged comment was not considered sufficiently prejudicial to invoke an objection at the time it

---

[1] "I feel very strongly, very deeply about my responsibility as a prosecutor. I think the law should be enforced, and I feel where crimes are committed that those who commit those crimes should be punished. By the same token, I feel just as strongly if persons are not guilty that they should be found not guilty.

My primary partiality stems from a very deep seated prejudice I have. I happen to revere human life. I feel that every person who is born on this sphere of ours, this earth, is entitled to live out their days."

[2] "Well, I believe that mercy cannot rob justice even for persons who murder their good friends."

[3] "Well ladies and gentlemen, for being a so-called best friend, Jessie Dearman had a strange New Year's present for his friend, Dennis Wayne Wolfe. I don't suppose Mr. Wolfe will be keeping his New Year's resolutions this year, will he? It is a beautiful day out here in the springtime. I don't suppose he will see the rose bloom either, will he?"

was made. Furthermore, the record discloses overwhelming evidence of guilt; thus, even if we assume there was error, in the context of this appeal, any error that may have occurred would be harmless. Harris v. State, 90 Nev. 172, 521 P.2d 367 (1974).

The evidence against Appellant is substantial. A number of eye witnesses observed the Appellant stand over the victim and fire repeatedly into him, stooping and aiming. When, as here, a guilty verdict is free from doubt, even rather aggravated prosecutorial remarks will not justify reversal. Jackson v. State, 93 Nev. 28, 559 P.2d 825 (1977); Riley v. State, 91 Nev. 196, 533 P.2d 456 (1975); Pacheco v. State, 82 Nev. 172, 414 P.2d 100 (1966).

We observe no error which would require reversal incidental to this issue.

3. *The Trial Court Erred in Admitting Exhibits 4, 7, and 8 (Color Photographs of the Victim) Over Defense Counsel's Objection:*

Dearman contends that the admission into evidence of the three colored photographs depicting bullet entry and exit wounds on the body of the decedent was error. He further contends that even if relevant, their prejudicial effect outweighed probative value. Finally, he asserts that the photographs were merely cumulative of other direct testimony and that there was no reason for their introduction. These contentions are without merit.

The record indicates that Exhibit 4 was admitted into evidence after the trial judge reviewed the offered photograph outside the presence of the jury. During that hearing, the Court sustained the defense objection to Exhibits 2 and 3 (additional photographs). The record further shows that the trial judge admitted the photographs marked as Exhibits 7 and 8 after considering their admissibility out of the presence of the jury and after testimony by the pathologist, Dr. Clarke, that the photographs would be helpful to him in explaining the cause of death.

In Allen v. State, 91 Nev. 78, 82, 530 P.2d 1195, 1197 (1975), this Court stated:

> Color photographs of a victim used by a doctor to explain the cause of death to a jury are properly admissible because they aid in the ascertainment of truth. The

probative value of the photographs outweighs any prejudicial effect they might have on the jury.

*See* also, Maginnis v. State, 93 Nev. 173, 561 P.2d 922 (1977); Scott v. State, 92 Nev. 552, 554 P.2d 735 (1976); Theriault v. State, 92 Nev. 185, 547 P.2d 668 (1976).

The trial judge exercised caution and took the intermediate step of determining whether the probative value of the proffered evidence outweighed any prejudicial effect. The trial court considered all of the objections to the photographs, rejecting several and admitting others. Further, examination of the questioned exhibits reveals nothing gruesome or inflammatory which could have excited or prejudiced the jury. State v. Gambetta, 66 Nev. 317, 208 P.2d 1059 (1949); Allen v. State, 91 Nev. 78, 530 P.2d 1195 (1975); Ricci v. State, 91 Nev. 373, 536 P.2d 79 (1975). The evidence clearly demonstrates that the photographs were used to illustrate and explain the circumstances of the crime and the nature of the victim's wounds, both of which are relevant to a determination of the degree of crime committed. It is in the sound discretion of the court to admit or exclude photographs, and absent a showing of abuse of this discretion the decision will not be overturned. People v. Polk, 406 P.2d 641 (Cal. 1965).

Affirmed.

BATJER, C. J., and MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.