**STATE of Missouri, Plaintiff–Respondent,**

v.

**James PATE, Defendant–Appellant.**

**No. 18059.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 22, 1993.

Motion for Rehearing or to Transfer Denied Aug. 13, 1993.

Application to Transfer Denied Sept. 28, 1993.

Ellen H. Flottman, Office of the State Public Defender, Columbia, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Judge.

A jury found defendant James Pate guilty of possession of over 35 grams of marijuana, and he was sentenced to imprisonment for five years. Defendant appeals.

Defendant contends that the trial court erred: (1) in overruling his motion to suppress evidence consisting of the marijuana and statements made by defendant, and admitting that evidence over his objection; (2) in overruling his objection to portions of the prosecutor's closing argument; (3) in overruling his objection to Sheriff Cox serving as bailiff in charge of the jury; and (4) in giving Instruction 4 defining "reasonable doubt."

Defendant does not challenge the sufficiency of the evidence to support the con-

viction. In addition to its formal portions, the information charged that on September 1, 1991, in Dallas County, the defendant "possessed more than 35 grams of marijuana, a controlled substance, knowing of its presence and illegal nature."

The state's evidence showed that on September 1, 1991, a Toyota pickup, driven by Eddie Kaufman, was stopped on Highway 65 in Dallas County by Highway Patrol Trooper James Portman and other officers. Defendant and Thomas Kaufman were passengers in the Toyota. Defendant informed Trooper Portman that he was the owner of the vehicle. The trooper asked if he could search the vehicle and defendant said, "Yes, go ahead." The search conducted by Portman disclosed eight burlap bags containing over 7,500 grams of marijuana.

State's Exhibit 19, a written statement signed by defendant on September 1, 1991, was received into evidence. In Exhibit 19, defendant described three prior trips to Waverly and his obtaining marijuana on each occasion. The statement also said, "Myself, Eddie Kaufman and Thomas Kaufman left [Little Rock, Arkansas] about 6 p.m. 8/31/91, and drove to Waverly, Missouri, to the same marijuana patch. We arrived about 4 a.m. 9/1/91. We all three cut the marijuana with our pocket knives and loaded the marijuana in burlap bags and put it in my pickup. My wife Tracy Leigh Pate knew what I was doing with my pickup and that I was going to bring the marijuana back with the pickup. Myself, Eddie Kaufman, and Thomas Kaufman was going to split the marijuana up between us and sell it when we got back to Little Rock."

After the state rested, defendant testified in his own behalf. He told the jury that the plants that were in the back of his Toyota were wild marijuana plants which he found at Waverly. "It was growing everywhere. It grows on the school yards. It's just wild. You can drive down the road and pick it off the side of the road." Asked about the contents of Exhibit 19, defendant admitted that he signed it. He also said that except for the fact that his

wife "did not know about it," all the other statements in Exhibit 19 were true. He said he had been furnished a copy of the exhibit.

Defendant's first point is that the trial court erred in overruling his motion to suppress the marijuana and his statements, because the challenged items were the fruit of an unlawful stop, in violation of defendant's rights under the Fourth and Fourteenth Amendments and the Missouri Constitution, because there was no showing that the dispatch to Trooper Portman, on which the stop was based, was issued on the basis of reasonable suspicion or that Trooper Portman independently observed behavior to justify the stop.

The Fourth Amendment of the United States Constitution affords citizens constitutional protection from unreasonable searches and seizures. The Fourth Amendment is not offended when a law enforcement officer briefly stops a person if the officer has a reasonable suspicion, based upon specific and articulable facts, that the person was or is involved in criminal activity. Nor is the Fourth Amendment offended when a law enforcement officer briefly stops a moving automobile to investigate, founded upon a reasonable suspicion that the occupants are involved in criminal activity, if the suspicion is supported by specific and articulable facts.

*State v. Franklin,* 841 S.W.2d 639, 641 (Mo. banc 1992) (citing authorities).

■ "[E]vidence from a *Terry*-type stop is inadmissible if an officer makes the stop on the basis of information provided by another officer or police department if the requesting officer or department lacked reasonable suspicion to make the stop." *Id.* at 642.

[I]f an officer makes a stop in objective reliance on information provided by another officer or law enforcement office, the evidence uncovered as a result of the stop is inadmissible if the police who *issued* the bulletin lacked reasonable suspicion to make the stop or if the stop was significantly more intrusive than would

have been permitted by the issuing department.

*Id.* at 643. (Emphasis in original.)

At the hearing on the defendant's motion to suppress, the state has the burden of producing evidence to show by preponderance of the evidence that the motion to suppress should be overruled. *Franklin,* at 644[10], § 542.296.6.[1]

Neither Trooper Portman nor any of the other officers personally observed any behavior on the part of defendant or the driver of the Toyota that would justify the stop. At the hearing on the motion to suppress, Trooper Portman testified that he received a dispatch "from Troop D radio" that the "Toyota was occupied by two people and was supposed to be transporting approximately 100 pounds of drugs." The Troop D dispatcher was not called to testify at that hearing.

As said in *Franklin,* at 644, "The record is silent as to the source of the information that led to the police dispatch. Without that information, the court cannot determine whether the dispatch was based upon reasonable suspicion." It follows that the trial court erred in overruling defendant's motion to suppress the marijuana and the statements. On this record, however, that erroneous ruling and the reception of the items into evidence constitute harmless error beyond a reasonable doubt.

> In *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), this Court rejected the argument that errors of constitutional dimension necessarily require reversal of criminal convictions. And since *Chapman,* "we have repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt."

*Rose v. Clark,* 478 U.S. 570, 576, 106 S.Ct. 3101, 3105, 92 L.Ed.2d 460 (1986).

The court in *Rose,* 478 U.S. at 576, 106 S.Ct. at 3105, said that the foregoing principle "has been applied to a wide variety of constitutional errors." The errors enumerated were failure to permit cross-examination concerning witness bias, denial of defendant's right to be present at trial, improper comment on defendant's failure to testify, admission of witness identification obtained in violation of right to counsel, admission of confession obtained in violation of right to counsel, and "admission of evidence obtained in violation of the Fourth Amendment." (Citing *Chambers v. Maroney,* 399 U.S. 42, 52–53, 90 S.Ct. 1975, 1981–1982, 26 L.Ed.2d 419 (1970).) The court also said, at 3105: "The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence."

The court, in *Rose,* enumerated certain constitutional errors which require reversal without regard to the evidence in the particular case, but no such error is present here.

In *Motes v. United States,* 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150 (1900), the Supreme Court held that testimony of a witness was improperly received because it was violative of the Sixth Amendment right of defendant Motes to confront the witnesses against him. However, Motes' conviction was affirmed because his trial testimony amounted to a confession. At 20 S.Ct. 1000 the court said:

> It would be trifling with the administration of the criminal law to award him a new trial because of a particular error committed by the trial court, when in effect he has stated under oath that he was guilty of the charge preferred against him.

Although the marijuana and the statements to the officers should have been suppressed, their subsequent receipt into evidence as part of the state's case was harmless error beyond a reasonable doubt because defendant voluntarily testified in his own behalf and his testimony amounted to a confession to which the challenged evidence was merely cumulative. *Motes v.*

---

1. All references to statutes are to RSMo 1986, V.A.M.S.

*United States, supra,* 178 U.S. 458, 472–475, 20 S.Ct. 993, 999–1000[4], 44 L.Ed. 1150 (1900); *U.S. v. Hill,* 864 F.2d 601, 602[1] (8th Cir.1988); *Young v. State of Maryland,* 455 F.2d 679, 680–681[1] (4th Cir.1972); *U.S. v. Czaplicki,* 446 F.2d 640[2] (9th Cir.1971); *Williams v. United States,* 399 F.2d 636[1] (9th Cir.1968); *Gladden v. Frazier,* 388 F.2d 777, 783[7] (9th Cir.1968); *McDonald v. United States,* 307 F.2d 272, 275[7] (10th Cir.1962). *State v. Nunn,* 646 S.W.2d 55, 57[1] (Mo. banc 1983); *State v. Sanders,* 473 S.W.2d 700, 703–704[2] (Mo.1971); *State v. Bradford,* 462 S.W.2d 664, 668–669 (Mo.1971); *State v. Smith,* 357 Mo. 467, 209 S.W.2d 138, 140[2, 3] (1948); *State v. McKee,* 811 S.W.2d 498, 500[2] (Mo.App.1991); *State v. Roberts,* 785 S.W.2d 614, 617[2] (Mo.App. 1990); *State v. Quinn,* 565 S.W.2d 665, 673[6] (Mo.App.1978); *Ex Parte Phillip K. Musgrove,* 519 So.2d 586, 587 (Ala.1986); *Barlow v. State,* 28 Ark.App. 21, 770 S.W.2d 186, 187 (1989); *People v. Alexis,* 806 P.2d 929, 932 (Colo.1991); *Castro v. State,* 186 Ga.App. 248, 367 S.E.2d 42 (1988); *Allen v. State,* 91 Nev. 78, 530 P.2d 1195, 1197[2] (1975); *Ross v. State,* 763 S.W.2d 897, 903–904 (Tex.App.1988); *Ortega v. State,* 669 P.2d 935, 943 (Wyo.1983); 30 A.L.R.3d 128, 191 (Wrongful Search or Seizure—as Reversible or Harmless Error). Defendant's first point has no merit.

Defendant's second point is that the trial court erred in overruling his objection to a portion of the prosecutor's closing argument in that the prosecutor "improperly argued scare tactics to the jury when he discussed crime in society as a whole, thereby appealing to the prejudices and passions of the jurors."

During the course of the prosecutor's closing argument, the following occurred:

PROSECUTOR: And in fact, the total, if you add up the chemist's report is in excess of 7,500 grams which is literally in excess of 215 times.

. . . . .

If this is not a maximum, then we need to lower the maximum. But if you have a felony possession and this is the maximum and you're 215 times over that,

then we need to lower the maximum, folks, but you know all the argument. You've heard them all. And like I said, I hope you will go back in there and that certainly is my recommendation. You're not judging this defendant, as we talked about. You're judging the evidence and if we don't start sending these people and send them—

DEFENSE COUNSEL: Your Honor, I'll object. I think he's making a send a message to the community argument. That's improper. The jury is to return its verdict based on the law and the facts and the evidence in this case.

THE COURT: Overruled. Go ahead.

PROSECUTOR: You think about it. You make the decision. You set the standard for this community so that people can see how you feel about drugs in Dallas County, but send a message. Thank you.

■ The prosecutor has the right to argue evidence and reasonable inferences from the evidence. *Clemmons v. State,* 785 S.W.2d 524, 530 (Mo. banc 1990). The prosecutor may state a conclusion if that conclusion is fairly drawn from the evidence. *Id.* The trial court's ruling in allowing argument of counsel is reversible only for an abuse of discretion where the argument is plainly unwarranted. *State v. McDonald,* 661 S.W.2d 497, 506 (Mo. banc 1983).

In *State v. Hatcher,* 835 S.W.2d 340 (Mo. App.1992), the prosecutor, in his final argument in a case involving possession of cocaine, said:

I would ask you to convict this defendant and show the people that we don't want to tolerate cocaine in our community, that we don't want our families exposed to this kind of thing. We don't want our children growing up with cocaine, and the way you send that message in a case like this is, first of all, you convict the defendant; and, secondly, you assess the punishment that will get the attention and deter people from bringing drugs into this community.

That's what you've got to do, folks. That's what I'm asking you to do.

The court of appeals held that the argument was not improper. To similar effect see *State v. Williams*, 747 S.W.2d 635, 638 (Mo.App.1988); *State v. Holt*, 660 S.W.2d 735, 738 (Mo.App.1983). Defendant's second point has no merit.

■ Defendant's third point is that the trial court violated his right to a fair trial "in permitting Sheriff Cox to serve as bailiff in charge of jury deliberations in that, although Sheriff Cox did not testify as a state's witness, he participated in the arrest of defendant and the jury was made aware of this fact through the testimony of the other state's witnesses."

After the case had been argued, the court asked Sheriff Cox to "come forward and be sworn." The record recites: "Sheriff Cox was duly sworn to take charge of the jury." The court then instructed the jury to go with the sheriff for their deliberations. At 3:44 p.m. the jury retired to begin their deliberations. The following then occurred:

DEFENSE COUNSEL: Your Honor, may I make an objection before—?

THE COURT: Go ahead and make it.

DEFENSE COUNSEL: I believe that Jerry Cox is an endorsed State's witness in this case. I would object to an endorsed witness for the State being put in charge of the jury during their deliberations.

PROSECUTOR: I don't know, is there a case on that somewhere that you're aware of? I know if you testify, but I wasn't aware that an endorsement would disqualify him.

THE COURT: I don't know that a potential witness disqualifies. Do you know of·a case?

DEFENSE COUNSEL: No, Your Honor, but his name has been mentioned during the testimony. And again, the appearance, the possibility of a taint upon the jury deliberations for having a witness for the State in charge of the jury—

THE COURT: I don't have any problem with that. He's not going to have any contact with them anyway. In the event that someone takes them out for supper we might find someone else to go feed them, but I don't see any problem with the Sheriff staying here and providing security for us and pass notes back and forth.

DEFENSE COUNSEL: I take it that you're overruling the motion?

THE COURT: I'm going to deny your request.

At 4:23 p.m. the jury returned with the verdict.

The only authority defendant cites in support of his third point is *State v. Tyarks*, 433 S.W.2d 568 (Mo.1968). In that case, citing Art. I, Section 18(a), Const. of Missouri, 1945, which deals with the right of a defendant in a criminal case to "a speedy public trial by an impartial jury of the county," the court said, at 569–570:

We now hold that, as a general rule, it is reversible error to permit an officer, *who testifies about matters which are more than merely formal aspects of the case,* and whose testimony tends to prove the guilt of the defendant, to be in charge of the jury.

.    .    .    .    .

We do not believe the right to an impartial jury can be reconciled with a practice which permits *a substantial witness for the State* to maintain a custodial relationship with the members of the jury throughout the trial. The relationship is one which, "could not but foster the jurors' confidence in those who were their official guardians during the entire period of the trial." *Turner v. State of Louisiana, supra,* 379 U.S. 466, 474, 85 S.Ct. 546, 550 [13 L.Ed.2d 424]. (Emphasis added.)

In *Gonzales v. Beto,* 405 U.S. 1052, 1055, 92 S.Ct. 1503, 1505, 31 L.Ed.2d 787 (1972), the court said:

But the Court in [*Turner v. State of Louisiana,* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965) ] was not dealing with just any prosecution witness coming into

any contact with the jury. Rather, it was dealing *with crucial witnesses* against the defendant who associated with the jurors as their official guardians throughout the trial. *Turner* established the simple principle that association of that particular sort cannot be permitted if criminal defendants are to be afforded due process of law.

At the heart of our holding in *Turner* lay a recognition of the great prejudice inherent in the dual role of jury bailiff and *key prosecution witness.* (Emphasis added.)

Sheriff Cox was not "a substantial witness for the state" or "a crucial witness against the defendant." He was not a witness at all. Defendant has made no showing of actual prejudice arising from Sheriff Cox's role as bailiff for the jury. Defendant's third point has no merit. *Johnson v. Dugger,* 932 F.2d 1360, 1364–1366[3–7] (11th Cir.1991); *Johnson v. Wainwright,* 778 F.2d 623, 626–627[1, 2] (11th Cir.1985); *Helmick v. Cupp,* 437 F.2d 321, 322–323[2] (9th Cir.1971); *Bowles v. State of Texas,* 366 F.2d 734, 736–738 (5th Cir.1966); 38 A.L.R.3d 1012 (Propriety and prejudicial effect in criminal case of placing jury in charge of officer who is a witness in the case).

Defendant's fourth point is that the trial court erred in giving Instruction 4, based on MAI–CR.3d 302.04, in that the instruction erroneously defined "reasonable doubt." In *State v. Blankenship,* 830 S.W.2d 1, 13[14] (Mo. banc 1992), the court rejected the same contention and said that the instruction has been repeatedly upheld. Defendant's fourth point has no merit.

The judgment is affirmed.

MONTGOMERY and GARRISON, JJ., concur.